THOMAS SMITH, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 20623.)

Court of Claims, November 18, 1931.

*Mackrell & Ranney* [*Charles J. Ranney* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*John M. Dooley* and *Joseph I. Butler, Deputy Assistant Attorneys-General,* of counsel], for the State of New York.

RYAN, J. This is one of the many claims filed under chapter 479 of the Laws of 1929 and chapters 701 and 736 of the Laws of 1930 and commonly referred to as the " Prevailing Rate of Wage Cases." The claimant, Thomas Smith, was employed by the State of New York as a night watchman at the Barge Canal terminal in the city of Troy. He was paid at the rate of eighty-five dollars per month.

It was not shown upon the trial that there was any group agreement in the city of Troy in relation to wages paid to night watchmen and the inference must be drawn that no such agreement existed in that locality or one or the other party to the controversy would have offered proof of it.

Claimant produced witnesses who testified to ten different rates of wages paid to night watchmen in the city of Troy in addition to the wage paid to claimant by the State. The Attorney-General did not controvert these rates nor offer any proof of other or different rates, and upon the trial the Deputy in charge stated: "I do not believe the State will present any contention in regard to the rate of wage. I have here a witness whom we thought would be different but it turns out to be of the same effect that the last witness testified and so it would be identical. We think the State will rest."

Claimant urges that he has met the burden of establishing a prevailing rate and that it was unnecessary for him to have presented for consideration every rate paid to night watchmen in the city of Troy but that the average of the rates testified to should be taken as the prevailing rate. We agree with this point of view with the modification that we believe that the rate paid by the State to claimant should be included with the other rates testified to in reaching the average.

The sole argument of the Attorney-General in urging dismissal of the claim is that claimant is not a "laborer, workman or mechanic," and that his occupation is not within the contemplation of the provisions of the acts under consideration.

Upon the trial claimant stated that he worked eight hours a day and seven days a week, every day in the year, without vacation; that he had to sweep and mop the floor, mop and clean, take care of the fires; that he was supposed to go through the building at least once an hour and did so; that he was the custodian of the real property; that he had the duty of guarding against thieving or destruction of property and was responsible if anything was missing while he was on duty; that he was the sole person on duty during his hours of service; that he took care of a small fire used to keep the office warm; that while the navigation season was open there were various telephone calls and that during his hours of duty he answered the telephone; that his duty was to prevent loiterers from lounging around the warehouse and terminal. It does not appear that claimant was deputized as a police officer by the municipal or other authorities. He stated that if he could not handle loiterers, "I am to call the City officers."

We have carefully examined the two cases in the Supreme Court of Georgia cited by the Deputy Attorney-General in his brief (*Tabb* v. *Mallette*, 120 Ga. 97, 101; *Oliver* v. *Mason Hardware Co.*, 98 id. 249), and also *McGraw* v. *City of Gloversville* (32 App. Div. 176) and *Farrell* v. *Board of Education* (113 id. 405), as well as several opinions of the Attorney-General rendered from time to time.

We distinguish the present case from all of these and believe that claimant's occupation was intended to be included by the Legislature and that he is entitled to an award.

There can be no question that the terminal at Troy is part of the Barge Canal and that chapter 746 of the Laws of 1911, pursuant to which the terminal was constructed, was an act amendatory of and supplemental to chapter 147 of the Laws of 1903.

BARRETT, J., concurs.